JUDGE TUCKER,
after stating the case as above, proceeded as follows.
The first point stated by the appellant’s counsel, as a ground of complaint against the decree, . is, that the demurrer *and pleas of Oliver Towles, the executor of Thomas, came in too late to be received, and made the grounds of a decree, after an answer by his testator, containing neither; and after the cause had been once set for hearing.
As this appears to me to be an important point relating to practice, I shall consider it, before I proceed, to the other questions relating to this cause.
If a suit abate by the death of a defendant, before he has put in his answer, and thereupon a subpoena to revive is issued against his executor, it would seem, upon principle, (and I make no doubt the practice is according thereto,) that the executor is entitled to defend himself in any and every way that his testator could have done. We are then to inquire what defence the testator, Thomas Towles, could have been admitted to make after answer filed, a general replication, a commission to take depositions awarded, and executed; publication of those depositions made; and the cause set for hearing thereupon? I presume, no further defence could be admitted, at this stage of the proceedings, unless some new matter utterly unknown to the defendant at any former period, or stage of the proceedings, should have been discovered by him, since the last step which had been taken in the cause.
Upon suggestion of this new matter, in the nature of a plea puis darrein continuance at ccmmon law, he might, I presume, be admitted to plead the same, if proper for a plea, or to file an amended answer, stating the new matter thus discovered, but nothing more: as in the case of Bacon v. Lewis, senior, (during the present term,) where the defendant, the executor, was permitted, after the cause was set for hearing, to file an amended answer, in consequence of his having discovered a memorandum, written by his testator with a pencil, in an old pocket-book, of which he had no knowledge before. A demurrer, which always lies to a bill for the defects aj parent upon the face of it, would then appear to be inadmissible in such a case, and so would a plea, or answer, as to any matter which the defendant might or could have offered in his defence before. ''Upon these grounds, I conceive the executor had no right to demur, plead, or answer to the bill, for or on account of any defect, or cause, of which the testator, Thomas Towles, might have availed himself, in either of those modes of defence, before the cause was set for hearing. But, this objection, like every other, may be removed by consent of the opposite party, either express, or necessarily implied. There is no express consent, nor even leave of Court, given to the filing of the demurrer, plea, and answer filed by the executor, Oliver Towles, to the bill of revivor. But there is, in the record, what, I conceive, concludes the plaintiffs, the now appellants, from making any objection thereto, in this Court. The subpoena to revive was executed, August 4th, 1801, and the answer of the executor was sworn to, April 2d, 1802; the time of filing it does not appear; but, six days after, we find the deposition of William Duval, taken in Richmond, in the suit between the complainants, and Oliver Towles, the executor; on which occasion, both Mr. Pope, the complainant, and the defendant, appeared to have attended, and examined the witness. Alexander Parker’s second deposition, appears to have been taken in the same manner, at Fredericks-burg, July the 6th, following; and the cause was not heard till the 26th of September, 1803, and no objection whatsoever appears in the record to any, or either, of these proceedings. I think, therefore, the plaintiffs must be considered as assenting, or at least, waiving all objections, to the proceedings below, subsequent to the return cf the subpoena to revive; and, therefore, that it is too late to make the objection here.
But, suppose it were otherwise, and that the cause now stood upon the original bill, answer, exhibits, and depositions. It is difficult to conceive how an order, drawn by Wily, on Nicholas Lewis, which was neither accepted, nor even presented, to pay to his attorney a debt, for which he had actually brought suit, should attach upon Lewis’s executor, so as to make him liable, further than the bond itself might make him so. It is still more difficult *lo conceive how that executor could be made responsible for the amount of orders not drawn upon his testator, (or known to him,) but upon the drawee’s own attorney, who had the conduct of the suit against Wiiy, and probably, (as the general practice is,) had the bond in his possession at the very time these orders were drawn.
If it had been Wily’s intention to have transferred the debt to Duval, why did he not assign the bond itself to him? The answer might be found in Duval’s deposition ; but I shall not notice it, because that deposition was not taken till after the suit was revived; and I am now considering the case as it stood before. As to all that passed between Mr. Duval, M.r. Pope, and the executor, Thomas Towles, as charged in the bill, it relates only to the payment of the judgment, which had been entered up by mistake, after Lewis’s death, or of the bond: not a word is said about these orders. Towles’s promise amounted, then, to no more than what the law itself would compel him to perform, viz. to pay the bond, if not founded upon a gaming consideration, provided he should have assets, which he admitted would be the case if he should recover the slaves. The complainants evidently understood it so; for they allege that they directed Mr. Duval to bring *586 suit upon it, after Towles recovered the slaves, and still refused to pay the bond. Suit was brought; but in the name of Wily, the original obligor; why did they not, then, get an assignment of the bond, if the tobacco due thereon, belonged to them? But, they charge that the suit was brought for their benefit. But they do not charge that Towles knew of that matter, otherwise than by referring to Mr. Duval’s deposition, annexed to the bill, and prayed to be taken as part thereof. The defendant’s answer, “that at the times he made the payments to Wily, he believed him to be justly, and solely entitled to receive them, if any one was,” appears to me to contain a sufficient answer to a charge thus indirectly made, and of which there is no proof whatsoever, except that deposition taken in a suit at common law, between Wily, plaintiff, *and Towles, defendant; but whether upon the bond in question, or any other, does not appear; there being no copy of any part of the record in that suit, except the dismission of it at the plaintiff’s costs. The depositions taken in that cause, though annexed to the bill, as exhibits, and prayed to be made a part of it, certainly can be no evidence against Towles in this cause, without something more to substantiate them. The answer then stands wholly uncontradicted in every particular; even as to the defendant’s knowledge of Wily’s insolvency, if that were the fact. Taking the case then as it stood at the time the suit abated, I am of opinion that the bill ought to have been dismissed. But, if the irregularity of the proceedings, after the suit was revived, be cured by the complainant’s consent, necessarily implied from the circumstances before noticed, I can entertain no doubt that the bond was given for the value of a horse lent to game with, at the time of playing, and therefore void, under the statute against gaming;(a) and that there is nothing in this case to take it out of the statute; consequently, that the decree of dismission ought to be affirmed.
JUDGE ROANE.
There is no error in the decree; and it ought to be affirmed.
JUDGE ELEMING.
It appears by the depositions of Alexander Parker and Thomas Wash, that the bond executed by Nicholas Lewis to John Wily, in August, 1781, conditioned for the payment of 12,000 lbs. of tobacco, (which bond is the foundation of this controversy,) was given on a gaming consideration, (of which Thomas Towles, executor of Lewis, had al-waj's a strong suspicion,) being for a horse worth about 121. or (at that time) about 3,0001bs. of tobacco, and lent by Wily to Lewis for the express purpose of gaming; with this condition, that, if the latter lost the horse, he should pay him 12,0001bs. of tobacco,, which being the case, he, *next morning, with Samuel O. Pet-tus, and Gabriel Poindexter, his securities, executed the bond to Wily.
Whatever irregularities may have taken place in the proceedings in Chancery, subsequent to the revival of the suit against the appellee, as executor of Thomas Towles, the case being rotten in its foundation, cannot be supported. I am therefore of opinion, that the bill was very properly dismissed, and am for affirming the decree, which is the unanimous opinion of the Court.

 Laws Virginia, 1794, c. 96.